UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

    v.

JON LAWRENCE FRANK,
    *Defendant.*

Case Number 1:17-cr-114-LMB-MSN

**REPORT & RECOMMENDATION**

This matter comes before the Court on the government's Application for Writ of Continuing Garnishment, in which it seeks to garnish the defendant's 401(k) retirement account to partially satisfy a criminal restitution order. Dkt. No. 60. The defendant argues that the government cannot do so because the 401(k) account is inalienable. Dkt. No. 71. Having reviewed the parties' briefs (Dkt. Nos. 71-75) and considered the oral arguments presented in Court,[1] the undersigned Magistrate Judge recommends granting the government's application for the reasons that follow.

I.    **Procedural Background**

On June 9, 2017, the defendant pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, for embezzling more than $19.4 million over a period of ten years from his former employer, NCI Information Systems, Inc. ("NCI"). Dkt. Nos. 20, 22. On September 8, 2017, the defendant was sentenced to 78 months imprisonment and three years of supervised release and was ordered to pay $19,440,331 in restitution to NCI. Dkt. No. 36. He remains in the custody of the Bureau of Prisons and has an expected release date of June 17, 2023. Dkt. No. 71

---

[1] A recording of the oral argument held on February 7, 2020, begins on the FTR recording system at 11:02:20 a.m.

at 2.  To date, NCI has recovered approximately $7.2 million in restitution, primarily through its civil action against the defendant.[2]

On September 5, 2019, the government filed an Application for Writ of Continuing Garnishment, pursuant to 28 U.S.C. § 3205(b)(1), naming Charles Schwab Corporation as the garnishee and seeking access to any account in which the defendant had a substantial nonexempt interest. Dkt. No. 60 at 1-2.  Charles Schwab initially filed an answer on September 9, 2019, advising the Court that defendant Jon Frank did not maintain an account with Schwab.  Dkt. No. 63-1.  Charles Schwab amended its answer on December 2, 2019, however, to acknowledge that it maintains a 401(k) account under the NCI Information Systems, Inc. 401(k) Plan, in the name of Jon Frank, containing approximately $479,504.54 in assets.[3]  Dkt. No. 65.  On December 6, 2019, the defendant filed a motion to appoint counsel, which was granted on the same day. Dkt. Nos. 66-67.  The defendant thereafter filed a response to the writ and requested a hearing. Dkt. No. 69.

On January 24, 2020, the defendant filed a Position on the Government's Application for Writ of Continuing Garnishment, advancing three arguments: (1) the government is not permitted to seize and liquidate his 401(k) retirement account because it is protected by the anti-alienation provision of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*; (2) even if ERISA does not apply, the government cannot access the funds because the defendant does not have unconditional access to the account; and (3) even if the government can access the funds, the funds are subject to the 25% garnishment cap provision in the Consumer Credit Protection Act ("CCPA").  *See* Dkt. No. 71.

---

[2] *See NCI Info. Systs., Inc. v. Frank*, Case No. CL2017-0000988 (Fairfax Circuit Ct.); *see also* Dkt. No. 71 at 2 ("[I]n the civil proceeding, Mr. Frank and NCI agreed to a receivership through which Mr. Frank's personal assets were funneled so that they could be liquidated and the money restored to NCI.").

[3] This amount is subject to daily market fluctuation.

The government filed a Memorandum in Support of Entry of Garnishment Order on January 30, 2020, responding that (1) ERISA is no bar to garnishment of the defendant's 401(k) account because the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663 *et seq.*, governs the defendant's restitution judgment; and (2) the CCPA's cap on garnishment does not apply to the lump-sum distribution the government seeks.  *See* Dkt. No. 72.  The defendant filed a reply on February 5, 2020 (Dkt. No. 73), and the government filed a Notice of Supplemental Authority the following day (Dkt. No. 74).  The undersigned heard oral argument on February 7, 2020.  Accordingly, this matter is ripe for disposition.

**II.     ERISA's anti-alienation provision does not protect the defendant's 401(k) retirement account from garnishment under the MVRA.**

The first question before the Court is whether the MVRA's directive mandating victim restitution trumps ERISA's robust protection of retirement funds.  The parties agree that ERISA's anti-alienation provision remains in full force with respect to criminal forfeiture or efforts by private parties to obtain pension funds in satisfaction of judgments.  *See, e.g.*, *United States v. Hermann*, 910 F. Supp. 2d 844, 848 (E.D. Va. 2012) (Ellis, J.) (defendant's interest in ERISA-protected retirement plan is protected from forfeiture).  However, the defendant argues that Congress could not have intended to override ERISA's anti-alienation provision for restitution orders because ERISA's specific language cannot be implicitly repealed by the MVRA's more general language, and because the MVRA can and should be read in harmony with ERISA, not in conflict.  Dkt. No. 71 at 7 (citations omitted).  Conversely, the government asserts that the language of the MVRA—both its "notwithstanding any other Federal law" clause and its identical treatment of restitution orders and tax liens—makes clear Congress's intent to override, for the purposes of restitution, any protections ERISA would otherwise provide to the defendant's 401(k) account.  Dkt. No. 72 at 8-9 (citations omitted).  After an examination of the two statutes, evaluation of

3

applicable canons of statutory construction, and review of the relevant case law, the undersigned finds that ERISA does not bar the government's seizure of the defendant's 401(k) account.

### A. ERISA and MVRA Statutes

In 1974, Congress enacted the Employment Retirement Income Security Act to "protect . . . the interests of participants in private pension plans" by establishing minimum standards. 29 U.S.C. § 1001(a). ERISA contains an anti-alienation clause that states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). This provision accords with ERISA's strong policy objective that "[r]etirement funds remain inviolate until retirement." *Boggs v. Boggs*, 520 U.S. 833, 851 (1997); *see also Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990) (noting that § 1056(d)(1) reflected a "considered congressional policy choice" to "safeguard a stream of income for pensioners").

Still, ERISA's anti-alienation protection is not absolute. Congress has twice amended § 1056(d) to create exceptions to the anti-alienation provision: once in 1984 to permit the collection of judgments pursuant to domestic relations orders, 20 U.S.C. § 1056(d)(3), and again in 1997 to permit the offset of a participant's benefits against the amount owed to the plan by the participant as a result of a breach of fiduciary duty to the plan or criminality involving the plan. 29 U.S.C. § 1056(d)(4); *see also* S. Rep. No. 105-33, at 310 (1997). Courts have acknowledged, however, that exceptions to ERISA's anti-alienation provision are only for Congress to make. *See Guidry*, 493 U.S. at 376; *Boggs*, 520 U.S. at 851 ("ERISA's pension plan anti-alienation provision is mandatory and contains only two explicit exceptions which are not subject to judicial expansion.").

This Court must determine whether Congress intended the Mandatory Victims Restitution Act of 1996 to provide just such an exception.  The legislative purpose of the MVRA is, "to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being."  *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000); *see also* S. Rep. No. 104-179 at 18 (1996) ("It is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender be held accountable to repay these costs.").  Specifically, the MVRA broadly provides that, "[n]otwithstanding any other provision of law," courts shall order that defendants convicted of certain enumerated offenses "make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1).

The MVRA instructs the government to enforce restitution orders in the same manner as criminal fines or "by all other available and reasonable means."  18 U.S.C. § 3664(m)(1)(A)(i)-(ii).  Thus, as with criminal fines, unpaid restitution orders can be enforced "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  18 U.S.C. § 3613.  Section 3613(a) specifically provides that:

> *Notwithstanding any other Federal law* (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against *all property or rights to property of the person fined*, except that—
>
>> (1) property exempt from levy for taxes pursuant to [certain enumerated subsections of § 6334(a)] of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
>>
>> (2) [property exemptions under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3014 ("FDCPA")] shall not apply to enforcement under Federal law; and
>>
>> (3) the provisions of section 303 [restriction on garnishment] of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

18 U.S.C. § 3613(a) (emphasis added).  A restitution order is therefore enforceable "against all of the [d]efendant's property except that property which would be exempt from a levy for the payment of federal income taxes," notwithstanding any other federal law.  *United States v. Rice*, 196 F. Supp. 2d 1196, 1199 (N.D. Okla. 2002) (finding that a restitution order may be enforced again defendant's pension benefits); *see also United States v. Lazorwitz*, 411 F. Supp. 2d 634, 637 (E.D.N.C. 2005) (the plain language of § 3613 "indicates that the only exemptions for the criminal debtor owing restitution are set out in the referenced provisions of 26 U.S.C. § 6334(a)").

      **B.**      **Statutory Construction Arguments**

Relying on canons of statutory construction, the government and the defendant advance opposing interpretations of the relevant statutes.  The government asserts that the language of § 3613(a) makes clear Congress's intent to subject ERISA-protected accounts to a restitution lien, pointing to three specific sections of the statute that establish this intent.  First, by using the "all property or rights to property" language, Congress makes clear that "the totality of defendants' assets" are subject to restitution orders.  Dkt. No. 72 at 8 (citing *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007)).  Second, § 3613(a)'s "notwithstanding" clause signals congressional intent that it should override conflicting provisions of "any other Federal law."  *Id.* (citing *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993); *United States v. DeCay*, 620 F.3d 534, 540 (5th Cir. 2010)).  Third, § 3613 clearly instructs that restitution orders are to be treated identically to liens resulting from a tax liability, and ERISA-protected accounts are not exempt from an IRS levy to satisfy outstanding tax obligations.  *Id.* at 8-9 (citing 18 U.S.C. § 3613(a), (c), (d); 26 C.F.R. § 1.401(a)-(13)(b)(2)).  Finally, the government notes that "every court to examine this issue has concluded that ERISA is no bar to the enforcement of restitution orders against qualified 401(k)s."  *Id.* at 7-8 (citations omitted).

The defendant, while acknowledging that courts have "tended to agree" that ERISA-protected retirement plans may be subject to restitution, argues that this conclusion is unsupported by and contrary to several relevant statutory commands. Dkt. No. 71 at 6 (citing *Novak*, 476 F.3d at 1064-77 (Fletcher, J., dissenting)). First, he argues, *Guidry* dictates that the general and non-specific language of the MVRA cannot alter the clear and specific language in ERISA. *Id.* at 7-8 (citing *Guidry*, 493 U.S. at 375-76 (holding that the general provisions of the LMRDA on securing relief did not override ERISA's specific anti-alienation provision); *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 168-69 (1976) (noting the "cardinal principle of statutory construction that repeals by implication are not favored")). Second, "notwithstanding" clauses are relevant only to determine which statute prevails in the event of a clash, but the MVRA and ERISA can and should be read without conflict: ERISA forbids alienation of covered funds while the MVRA permits garnishment of disbursed funds no longer protected by ERISA. Dkt. No. 71 at 9 (citing *N.L.R.B. v. SW General Inc.*, 137 S. Ct. 929, 939 (2017)); *see also United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (absent a clear manifestation of contrary intent, a newly-enacted statute must be presumed to be harmonious with existing law and its judicial construction). Third, in drafting the "notwithstanding any other Federal law" clause, Congress's decision to explicitly reference § 207 of the Social Security Act—which provides protections similar to ERISA's anti-alienation provision—but not mention § 1056(d)(1) is not surplusage but further evidence that ERISA and the MVRA do not clash. *Id.* at 9-10. Conversely, that Congress has twice amended § 1056(d)(1) to add explicit exceptions to ERISA's anti-alienation provision but did not do so for the MVRA reinforces the argument that Congress did not intend such an exception.

## C.       Relevant Authority

The Fourth Circuit has not addressed this precise question of whether the MVRA's directive to enforce restitution orders against "all property" includes retirement accounts otherwise protected by ERISA's anti-alienation protection.[4]  However, the Second and Ninth Circuits, as well as every district court to examine this issue (including the Eastern District of Virginia), have all concluded that the MVRA demonstrates clear congressional intent to override ERISA's anti-alienation provision.  *See, e.g.*, *Novak*, 476 F.3d at 1053; *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006); *United States v. James*, 312 F. Supp. 2d 802, 805 (E.D. Va. 2004) (citing multiple district court cases holding the same).

In the context of the nearly-identical anti-alienation provision in the Internal Revenue Code ("IRC"), 26 U.S.C. § 401(a)(13)(A),[5] the Fifth and Seventh Circuits have similarly concluded that the MVRA allows garnishment of retirement plans, notwithstanding the IRC's protections.  *See, e.g.*, *DeCay*, 620 F.3d at 540; *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009).  Finally, in an unpublished opinion, the Fourth Circuit examined whether the MVRA permits garnishment of property that was otherwise statutorily exempt and concluded that it did.  *United States v. Lambert*, 395 F. App'x 980, 981 (4th Cir. 2010) (finding that a tribal law exempting certain property from garnishment was inapplicable to restitution enforcement because the MVRA's "notwithstanding" clause supersedes conflicting federal statutes).

---

[4] The defendant concedes that the Fourth Circuit opinion in *United States v. Smith*, 47 F.3d 681 (4th Cir. 1995), predates the MVRA and has no bearing on the instant case.  *See* Oral Argument at 11:15:30 a.m.

[5] This section of the IRC reads in part: "A trust shall not constitute a qualified trust under this section unless the plan . . . provides that benefits provided under the plan may not be assigned or alienated."  *Cf.* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").

#### D.      Analysis

The defendant relies heavily on the Supreme Court's 1990 decision in *Guidry* to argue that

the MVRA does not establish clear congressional intent to override ERISA's specific anti-

alienation provision. *See Guidry*, 493 U.S. at 375-76 (refusing to create a judicially-recognized

exception to ERISA's anti-alienation provision, even to effectuate relief due to "employee

malfeasance or for criminal misconduct," because "it is for Congress to undertake that task").

*Guidry* found that the general reference to "other appropriate relief" in the Labor-Management

Reporting and Disclosure Act ("LMDRA")[6] did not indicate intent to override ERISA's "express,

specific congressional directive that pension benefits not be subject to assignment or

alienation." *Id.* at 376 (relying on the principle that "a specific statute will not be controlled or

nullified by a general one" absent clear intent otherwise).  Here, however, not only is the MVRA's

restitution statute more specific than the LMRDA, it also demonstrates Congress's clear intent to

override ERISA, as explained below. *See, e.g.*, *James*, 312 F. Supp. 2d at 805 (noting that in

passing the MVRA, Congress had created exactly the kind of exception called for in *Guidry*).

As noted by the Ninth Circuit, "all standard principles of statutory construction support the

conclusion that MVRA authorizes the enforcement of restitution orders against retirement plan

benefits, the anti-alienation provision of ERISA notwithstanding." *Novak*, 476 F.3d at 1053.  At

the outset, the undersigned rejects the defendant's supposition that ERISA and the MVRA may be

read harmoniously by distinguishing "covered funds" from "disbursed funds." *See* Dkt. No. 71

at 9.  Here, the government seeks to garnish the corpus of defendant's 401(k) retirement account

to satisfy a restitution order.  The ERISA provision that protects this account from alienation

---

[6] The LMRDA provides, under certain conditions, a private right of action "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." 29 U.S.C. § 501(b).

directly conflicts with the MVRA's directive that "all property or rights to property" be subject to restitution enforcement "[n]otwithstanding any other Federal law." The defendant concedes that, in the event of a clash, the "notwithstanding" clause is there to indicate which statute prevails. *Id.*

The Supreme Court has advised that Congress's use of a "notwithstanding" clause "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros*, 508 U.S. at 18 (citing *Shomberg v. United States*, 348 U.S. 540, 547-48 (1955)). In the instant case, two facets of the MVRA's enforcement provision, § 3613(a), require giving full effect to the statute's "notwithstanding" clause as applied to ERISA's anti-alienation provision: its treatment of otherwise inalienable property and its replication of the language authorizing tax levies. *See Novak*, 476 F.3d at 1047; *Lambert*, 395 F. App'x at 981 ("The MVRA's 'notwithstanding' clause supersedes conflicting federal statutes.").

First, § 3613(a)'s inclusion of SSA benefits and exclusion of certain retirement plans demonstrates that Congress specifically considered the question of restitution enforcement against retirement plan assets. *Novak*, 476 F.3d at 1049. The statute specifies that "all property" is subject to enforcement "[n]otwithstanding any other Federal law," including section 207 of the Social Security Act ("SSA"), codified at 42 U.S.C. § 407. Because the SSA is "the one federal anti-alienation provision that demands explicit statutory override," the MVRA's failure to expressly mention ERISA in this parenthetical is inconsequential. *Id.* at 1047-48 (citing 18 U.S.C. § 3613(a); 42 U.S.C. § 407(b)). In fact, the SSA provides *greater* anti-alienation protections to Social Security benefits than ERISA does to retirement accounts, demonstrating that Congress meant what it said: that the MVRA "reaches '*all* property or rights to property' not excepted, including property otherwise covered by federally mandated anti-alienation provisions." *Id.* at 1048 (citing 18 U.S.C. § 3613(a)) (emphasis added); *see also United States v. Nat'l Bank of Commerce*,

472 U.S. 713, 719-20 (1985) ("The statutory language 'all property and rights to property' . . . is broad and reveals on its face that Congress meant to reach every interest in property . . . .") (quoting tax collection statute, 26 U.S.C. § 6321).

Moreover, the MVRA specifically exempts certain retirement plans from the enforcement of restitution orders "*even though* those plans were already covered by anti[-]alienation statutes." *Novak*, 476 F.3d at 1048 (emphasis added); *see* 18 U.S.C. § 3613(a)(1), 26 U.S.C. § 6334(a)(6) (exempting certain annuity and pension payments made to former members of the armed services or railroad workers). By expressly exempting already-inalienable property, Congress sends the clear message that, in light of the "notwithstanding" clause and the "all property" language, the anti-alienation provisions in each of those federal pension statutes are not sufficient to protect these benefits from garnishment. *Novak*, 476 F.3d at 1048. In this context, Congress's failure to include ERISA-covered plans in the list of exempted retirement plans "has substantial significance." *Id.* at 1048-49 (citing *Tang v. Reno*, 77 F.3d 1194, 1197 (9th Cir. 1996) ("[A]n item which is omitted from a list of exclusions is presumed not to be excluded.")). To avoid statutory interpretations resulting in superfluous language, it follows that § 3613(a)(1)'s express exclusion of certain retirement plans indicates that *other* federal pension plans with anti-alienation provisions—such as ones covered by ERISA—would not be exempt from restitution enforcement. *Id.*

In addition to the "notwithstanding" clause, congressional intent to override ERISA's anti-alienation provision is also evidenced by the statute's replication of and cross-reference to the statutes governing tax liens. The language of § 3613(a) closely tracks the language from a statute specifying property subject to tax levy, which provides that "[n]otwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to

11

property shall be exempt from levy other than the property specifically made exempt by subsection

(a)." 26 U.S.C. § 6334(c); *cf.* 18 U.S.C. § 3613(a) ("Notwithstanding any other Federal law

(including section 207 of the Social Security Act), a judgment imposing a fine may be enforced

against all property or rights to property of the person fined, except that (1) property exempt from

levy for taxes pursuant to [26 U.S.C. § 6334(a)] shall be exempt from enforcement of the judgment

under Federal law . . ."). This similarity is significant for two reasons. First, after determining

that the two statutes cannot be read harmoniously, courts have uniformly interpreted § 6334(c) as

negating ERISA's anti-alienation provision for the enforcement of tax liens. *See, e.g.*, *Hosking*,

567 F.3d at 355 ("[T]he IRS can levy on a tax debtor's IRA or pension plan to satisfy tax liability,

so long as the defendant has a right to withdraw money from or liquidate the account."); *Novak*,

476 F.3d at 1050 ("[T]his court has construed the tax levy language as rendering ERISA's anti-

alienation provision inapplicable.") (citations omitted); *Irving*, 452 F.3d at 126 ("ERISA pension

plans are not exempted from payment of taxes under 26 U.S.C. § 6334"); *James*, 312 F. Supp. 2d

at 806 (noting that IRS regulations permit tax levies against an ERISA-protected plan) (citing 26

C.F.R. § 1.401(a)-13(b)(2)).

Second, Congress was aware of this judicial interpretation when it decided to replicate the

language of the tax levy statute in the restitution enforcement statute. *See Novak*, 476 F.3d at 1051

(reviewing legislative history of the MVRA). It is thus particularly telling that the MVRA's

enforcement statute specifically instructs that "an order of restitution . . . is a lien in favor of the

United States on all property and rights to property of the person fined as if the liability of the

person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."

18 U.S.C. §§ 3613(c), (d). Taken together, the MVRA's "notwithstanding" clause in conjunction

with the broad "all property or rights to property" language, the inclusion of otherwise-inalienable

SSA benefits and the exclusion of otherwise-inalienable retirement benefits as property subject to enforcement, and the replication of the tax levy statute language previously construed to allow the seizure of ERISA-protected retirement plans, all constitute clear congressional intent to make non-exempt retirement benefits available for restitution enforcement.  *See Novak*, 476 F.3d at 1053.

Finally, the undersigned briefly addresses the defendant's argument concerning the limited scope of the 1997 amendment to ERISA's anti-alienation provision (one year after the passage of the MVRA) and Congress's failure to similarly amend § 1056(d)(1) to create an exception for the MVRA.  Dkt. No. 71 at 10-11.  Relying on the dissent in *Novak*, the defendant argues that the 1997 amendment demonstrates that Congress "obviously did not believe the MVRA provided an avenue to attach pension funds," *id.* at 11, and therefore the amendment was necessary to "allow a narrow subset of restitution orders to reach ERISA-covered pension benefits . . . expressly authoriz[ing] restitution when the crime involved the pension plan itself."  *Novak*, 476 F.3d at 1071-72.

This reading of the amendment is inaccurate.  The 1997 amendment "does not address *the government's* right judicially to enforce restitution orders against retirement plans.  Instead, [it] concerns the remedies *a plan* can use to recover for crimes perpetrated against it – without having to obtain the assistance of the U.S. Attorney's Office or to follow the procedure of FDCPA (or other statutes) that detail the steps the government must take to seize property."  *Id.* at 1057.[7]  The instances giving rise to *the plan's* ability to take such action include federal or state criminal convictions (the MVRA applies only to federal convictions), civil judgments, or certain settlement agreements based on a breach of fiduciary duty to the plan.  *See id.*; 29 U.S.C. § 1056(d)(4)(A)(i)-(iii).  As noted above, Congress addressed the *government's* right to enforce restitution orders in

---

[7] *Novak* also notes that Congress intended this amendment to "resolve the circuit split on the interplay between the statutory provisions authorizing plans to use self-help to recover for the breach of fiduciary duty and the anti-alienation provision."  *Id.* at 1056.

18 U.S.C. § 3613(a), in which it explicitly exempted certain inalienable retirement plans from the MVRA, but not others.

Accordingly, for all the reasons discussed above, the undersigned concludes that the language of the MVRA must be construed to overcome the strong presumption of the continuing viability of the anti-alienation provision of ERISA.

III.   **The government, stepping into the defendant's shoes, can require a lump-sum liquidation of the 401(k) account.**

Having found that the funds in the defendant's retirement account are subject to seizure by the government to enforce this Court's restitution order, the undersigned next turns to the question of how and when the government can do so.  The FDCPA, which provides civil enforcement procedures for garnishments against a debtor's property, 28 U.S.C. § 3205, defines property as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))."  28 U.S.C. § 3002(12); *see also* 18 U.S.C. § 3613(a)(2) (noting that property exemptions under the FDCPA do not apply).  The defendant concedes that his 401(k) account is, at minimum, an "interest in property" as defined by the FDCPA.[8]  However, before the government can require the retirement plan "to turn over the entire present value of a [defendant]'s interest" immediately, the Court must determine whether this "contingent interest has become property or a right to property within the meaning of § 3613(a)." *Novak*, 476 F.3d at 1059 (cleaned up).

When enforcing a tax lien against a retirement account, the Supreme Court has held that the government stands in the account holder's shoes and "acquires whatever right the taxpayer

---

[8] *See* Oral Argument at 11:14:22 a.m.

himself possesses." *Nat'l Bank of Commerce*, 472 U.S. at 725.  A restitution lien is no different. *See* 18 U.S.C. §§ 3613(c) ("an order of restitution . . . is a lien . . . on all property and rights to property of the person fined *as if* the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986") (emphasis added); *United States v. Sayyed*, 862 F.3d 615, 619 (7th Cir. 2017).  Applying the tax levy analogy to the MVRA, the Ninth Circuit held that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment – rather than merely obtain postretirement payments that otherwise would have gone to the defendant – if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time." *Novak*, 476 F.3d at 1063 (quoting the IRS manual, which states that a levy can reach a taxpayer's present right to withdraw money in a lump sum from a retirement plan); *see also* Dkt. No. 71-1 at 20 (the plan's terms specifically permit "garnish[ment] or levy . . . in the case of a proper IRS tax levy").  In other words, "criminal restitution orders can be enforced by garnishing retirement funds, but with funds only payable when the defendant has a current, unilateral right to receive payments under the terms of the retirement plan." *Novak*, 476 F.3d at 1043.

Both parties agree that "[i]f a defendant's right to receive a lump-sum distribution of his retirement funds is subject to a condition, the government would not have any more access than the defendant." *Sayyed*, 862 F.3d at 619-20; Dkt. No. 71 at 11-12; Dkt. No. 72 at 10.  The defendant contends, however, that his access to the 401(k) account *is* subject to conditions—namely, hefty withdrawal penalties and tax implications—and that because he does not have "unfettered" access to these funds, neither does the government. Dkt. No. 71 at 12.  This argument is not persuasive.  The "present right" to a lump-sum withdrawal required here "is not based upon the rights [the defendant] would *prefer* to exercise; rather, it is based upon the rights [the

15

defendant] *possesses*." *Sayyed*, 862 F.3d at 619 (finding that the government may access

defendant's 401(k) account despite tax penalties for early distribution of the funds); *cf. Novak*, 476

F.3d at 1043 (noting that the government could not reach funds where plan requires spousal

consent for lump-sum distributions); *United States v. Cullenward*, 2014 U.S. Dist. LEXIS 49884,

at *1 (E.D. Cal. Apr. 9, 2014) (writ of garnishment quashed where defendant did not possess a

"present unilateral right" to receive a lump-sum distribution from his wife's retirement account).

Penalties and tax fees may disincentivize, but do not preclude, withdrawals from retirement

accounts.  As the defendant concedes,[9] nothing in the terms of the NCI 401(k) Plan limits his

ability to immediately and unilaterally withdraw a lump-sum amount.  *See* Dkt. No. 71-1 at 12;

*Sayyed*, 862 F.3d at 619 (where a defendant "has the unrestricted right to withdraw funds from the

account, it is inconceivable that Congress . . . intended to prohibit the Government from levying

on that which is plainly accessible to the defendant") (citing *Nat'l Bank of Commerce*, 472 U.S. at

726).   The undersigned therefore concludes that the government has the right to force the

immediate liquidation of the entire account based on the defendant's present right to withdraw a

lump sum under the terms of his pension plan.

## IV.     CCPA caps on garnishment of wages do not apply to lump-sum distributions.

The defendant next argues that the funds in his 401(k) account are "earnings" as defined

by the CCPA, and therefore any garnishment is statutorily limited to 25 percent.  Dkt. No. 71 at

13.  It is true that "periodic" payments from pension or retirement plans are "earnings" within the

meaning of the CCPA.  15 U.S.C. §§ 1672(a) ("The term 'earnings' means compensation paid or

payable for personal services . . . and includes periodic payments pursuant to a pension or

retirement program."); *see also United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011); *Decay*,

---

[9] *See* Oral Argument at 11:13:55 a.m.

620 F.3d at 544.  The defendant contends that courts have myopically focused on the "periodic

payments" language rather than considering that lump-sum 401(k) distributions are actually

"compensation."  Dkt. No. 71 at 15.  However, it is clear from the language of § 1673(a) that the

CCPA's restrictions on garnishment are intended to apply to *periodic* compensation, no matter the

source: in (a)(1) and (a)(2), the calculations for two types of garnishment limits are based on a

person's "disposable earnings *for that week*."  15 U.S.C. § 1673(a)(1)-(a)(2) (emphasis added); *see*

*also Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (Congress clearly sought to regulate

garnishment of "periodic payments of compensation needed to support the wage earner and his

family on a week-to-week, month-to-month basis").

Just as a tax refund or lottery winnings would have to be turned over as a lump sum for

purposes of restitution, a lump-sum withdrawal from the 401(k) account would likewise have to

be turned over in its entirety (with the exception of any tax withholdings by Schwab under the

terms of the plan).

## V.      Equities do not favor the defendant.

Finally, the defendant asserts that, notwithstanding its ruling on whether the government

can reach his 401(k) account, this Court has "the power to order the government to allow Mr. Frank

a portion of the funds to assist in his transition to society upon his release."  Dkt. No. 71 at 16

(citing FDCPA, 28 U.S.C. § 3013) ("The court may at any time on its own initiative . . . make an

order denying, limiting, conditioning, regulating, extending, or modifying the use of any

enforcement procedure under this chapter.").  Assuming, without deciding, that the FDCPA gives

this Court discretionary power to consider the defendant's personal circumstances in determining

17

whether to limit the government's enforcement of a restitution order,[10] the undersigned nonetheless finds that the equities are not in the defendant's favor in this case.

Courts that have invoked 28 U.S.C. § 3013 to modify restitution payments have done so in circumstances that differ significantly from those here, and all appear to involve the garnishment of an individual's periodic earnings. *See, e.g.*, *United States v. Ogburn*, 499 F. Supp. 2d 28 (D.D.C. 2007) (relying on § 3013 to temporarily suspend, but not revoke, garnishment of bimonthly wages where defendant presented concrete evidence of financial hardship and need to support two minor children); *United States v. Dover*, 2016 U.S. Dist. LEXIS 25959, at *11-13 (E.D. Mich. Mar. 2, 2016) (relying on § 3013 to suspend garnishment of an incarcerated defendant's monthly disability benefits where the funds were insufficient to support his wife and two minor children).

By contrast, the instant case involves the garnishment of a one-time, lump-sum distribution, not periodic wages. More importantly, the defendant has failed to demonstrate the sort of specific hardships, such as the need to support minor children, that have swayed courts in other cases. *Cf. United States v. Kaye*, 93 F. Supp. 2d 196, 200 (D. Conn. 2000) (no hardship where defendant's net income, when combined with his spouse's, was sufficient even after a 25% garnishment "to meet a reasonable level of family and household expenses"); *United States v. Hall*, 760 F. Supp. 2d. 146, 150 (D. Me. 2011) (no hardship where defendant had a place to stay, a minimum wage job, and no history of mental health or substance abuse problems); *United States v. King*, 2012 U.S. Dist. LEXIS 45949, at *19 (E.D. Pa. Apr. 2, 2012) (no hardship where 66-year-old defendant had a place to live, ability to work, and income stream through Social Security benefits).

---

[10] *See United States v. Holmes*, 2011 U.S. Dist. LEXIS 128537, at *5 (W.D.N.C. Nov. 4, 2011) (noting that the Fourth Circuit has not yet reached this question but persuaded by other opinions that § 3013 of the FDCPA gives courts the discretionary power to modify writs of garnishment).

The undersigned is not unsympathetic to the defendant's desire to use his retirement funds to help support his rehabilitation efforts when he is released from custody.  However, this general consideration would seemingly apply to any defendant upon his or her release, and the defendant has failed to point to any specific factors that weigh the equities in his favor.[11]

## VI.   Recommendation

For the foregoing reasons, the undersigned finds that the MVRA evinces clear congressional intent to override ERISA's anti-alienation protections for the purposes of restitution and permits the government to seize and liquidate defendant's 401(k) retirement account to enforce a restitution order pursuant to the MVRA.  Accordingly, the undersigned recommends granting the government's Application for Writ of Continuing Garnishment (Dkt. No. 60).

## VII.   Notice

By means of the Court's electronic filing system, the parties are notified as follows: Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation.  Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
_____
Michael S. Nachmanoff
United States Magistrate Judge

March 4, 2020
Alexandria, Virginia

---

[11] At oral argument, the government offered to allow 10% of the distribution to be paid to the IRS to offset any additional tax penalty incurred by the defendant. *See* Oral Argument at 11:08:51 a.m.  Because the government is forcing the early withdrawal that would incur such a penalty, the Court approves of this result.